

# IN THE
# TENTH COURT OF APPEALS

### No. 10-16-00364-CV

**M.E.N. WATER SUPPLY CORPORATION,
ANGUS WATER SUPPLY CORPORATION,
CHATFIELD WATER SUPPLY CORPORATION,
CORBET WATER SUPPLY CORPORATION,
CITY OF FROST, CITY OF KERENS,
AND COMMUNITY WATER COMPANY,**

                                                **Appellants**

 **v.**

**CITY OF CORSICANA, TEXAS,**

                                                **Appellee**

---

**From the 13th District Court
Navarro County, Texas
Trial Court No. D13-22473-CV**

---

## OPINION

---

In six issues, appellants, M.E.N. Water Supply Corporation, Angus Water Supply

Corporation, Chatfield Water Supply Corporation, Corbet Water Supply Corporation,

the City of Frost, the City of Kerens, and the Community Water Company, complain

about rulings on various motions that comprise the final judgment that was granted in

favor of appellee, the City of Corsicana. We affirm, in part, and reverse and remand, in part.

## I.    BACKGROUND

In July 2013, appellants filed their original petition against Corsicana, asserting that Corsicana breached contracts "by charging rates higher than those authorized by the contracts, and the Ratepayers have incurred damages as a result."[1]   Specifically, appellants complained about Corsicana's decision, in 2009, to shift from a flat, volumetric water rate to inclining, block rates for all retail and wholesale customers.  Appellants alleged that this shift resulted in ratepayers "not being charged the rates being charged general consumers of Seller [Corsicana], within the City of Corsicana."   In their live pleading, their fourth amended petition, appellants expanded their claims to include allegations that Corsicana is not immune from breach-of-contract claims with regard to proprietary functions and a request for specific performance.

Corsicana responded by filing a plea to the jurisdiction, arguing that sovereign immunity applies to appellants' breach-of-contract and specific-performance claims. Corsicana also moved to dismiss the claims filed by Kerens and Frost because the damages sought by Kerens were not allowed under Chapter 271 of the Local Government Code, and because Frost cannot recover damages due to a failure to satisfy a condition

---

[1] The City of Blooming Grove was a named plaintiff in appellants' original petition; however, Blooming Grove ultimately non-suited its claims against Corsicana and, thus, is not a party to this appeal.

precedent in the contract between Corsicana and Frost. Additionally, Corsicana filed no-evidence and traditional motions for summary judgment, asserting numerous grounds.

After a hearing, the trial court granted Corsicana's no-evidence and traditional motions for summary judgment and ordered that Kerens take nothing on its claims. The trial court also granted Corsicana's plea to the jurisdiction as to the Water Supply Corporations and motion to dismiss as to Frost. In its final judgment, the trial court summarized all of its prior rulings, denied all relief requested by appellants, and ordered that appellants take nothing on their claims. This appeal followed.

## II. CORSICANA'S MOTION TO DISMISS

In its first issue, Frost contends that the trial court erred in dismissing its claims for failure to satisfy a non-existent condition precedent. In particular, Frost argues that its contract did not limit its right to file suit for breach of contract. We agree.

### A. Standard of Review

We review the trial court's ruling on a motion to dismiss under an abuse-of-discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Even if a reviewing court would have decided the issue differently, it cannot disturb the trial court's decision,

unless it is shown to be arbitrary and unreasonable. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

## B.     Discussion

In this issue, the parties focus on the contents of Frost's contract with Corsicana for water. Specifically, the vital portion of the contract is section 4.06, which provides the following:

> **Section 4.06.  Disputed Bills.**  If Purchaser disputes the amount of a bill rendered by Seller pursuant to this Contract, Purchaser shall nevertheless pay such bill in accordance with Section 4.04.  If it is subsequently determined by agreement or a final, unappealable court order that the amount of the disputed bill should have been less (or more), the amount of the bill shall be promptly and appropriately adjusted, and the amount of any reimbursement (or additional payment) that is due after the adjustment shall be paid by the owing Party within ten (10) days of such agreement or court order.  If not paid when due, such amounts bear interest at the rate of ten percent (10%) per annum from the due date until paid.  Provided, however, interest may be waived by the Party to whom the amount is owed.

(Emphasis in original.)  In the trial court and on appeal, Corsicana construes this clause as requiring Frost to satisfy a condition precedent—either obtain an agreement with Corsicana or a final, unappealable court order finding overpayment—before seeking an adjustment on their bills.  Frost disagrees.

When reviewing a contract, our goal is to determine the parties' true intentions as expressed in the instrument. *Plains Exploration & Prod. Co. v. Torch Energy Advisors, Inc.*, 473 S.W.3d 296, 305 (Tex. 2015); *see Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).  "We 'construe contracts from a utilitarian standpoint bearing in mind the particular business

activity sought to be served,' and avoiding unreasonable constructions when possible and proper." *Plains Exploration & Prod. Co.*, 473 S.W.3d at 305 (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). We must "consider the entire writing, harmonizing and giving effect to all the contract provisions so that none will be rendered meaningless." *Id.* (citing *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014)). "No single provision taken alone is given controlling effect; rather, each must be considered in the context of the instrument as a whole," and we must "give words their plain, common, or generally accepted meaning unless the contract shows that the parties used words in a technical or different sense." *Id.* If the contract's language can be given a definite legal meaning or interpretation, then it is not ambiguous and we will construe the contract as a matter of law. *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)).

With regard to conditions precedent, Texas courts have stated:

"A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement." *Hohenberg Bros. Co. v. George Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976); *see II Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 264 (Tex. App.—San Antonio 2001, pet. denied). As such, a condition precedent may "relate either to the formation of contracts or to liability under them." *Hohenberg Bros.*, 537 S.W.2d at 3. "Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Id.*; *Deerfield*, 41 S.W.3d at 264. Although no words in particular are necessary for the existence of a condition, "such terms as 'if', 'provided that', 'on condition that,' or some

other phrase that conditions performance, usually connote an intent for a condition rather than a promise." *Hohenberg Bros.*, 537 S.W.3d at 3; *Deerfield*, 41 S.W.3d at 264-65. "In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties." *Hohenberg Bros.*, 537 S.W.3d at 3; *Deerfield*, 41 S.W.3d at 265. "However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition." *Hohenberg Bros.*, 537 S.W.3d at 3. Because of their harshness and operation, conditions precedent are disfavored. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990); *Sirtex Oil Indus., Inc. v. Erigan*, 403 S.W.2d 784, 787 (Tex. 1966).

*Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 64 (Tex. App.—

Houston [1st Dist.] 2011, no pet.).

After review, we do not agree with Corsicana's interpretation of section 4.06 of the

contract. Though section 4.06 includes several sentences that begin with "if," which can

connote a condition precedent, nothing in the section requires an agreement or final,

unappealable court order as a condition precedent to filing suit for breach of contract. In

fact, the operative language does not contemplate the filing of any lawsuit. Rather, the

language relied upon by Corsicana states only that an agreement or final, unappealable

court order adjusting amounts owed creates a contractual obligation for the debtor to pay

the amount due within ten days. And contrary to Corsicana's assertions, section 4.06

does not mention, much less require, an order from an administrative case as a condition

precedent to the filing of a breach-of-contract suit. Therefore, because conditions

precedent are disfavored, and because the trial court's dismissal order is premised on an

erroneous finding that Frost did not satisfy the purported condition precedent outlined in section 4.06, we conclude that the trial court abused its discretion in granting Corsicana's motion to dismiss Frost's lawsuit on this basis. *See Palacios*, 46 S.W.3d at 875; *see also Criswell*, 792 S.W.2d at 948; *Erigan*, 403 S.W.2d at 787; *Gulf Liquids New River Project, LLC*, 356 S.W.3d at 64. Accordingly, we sustain appellants' first issue.

## III.   SUMMARY JUDGMENT

In their second and third issues, Kerens argues that the trial court erred in granting summary judgment in favor of Corsicana. Specifically, Kerens asserts that it produced evidence that a valid contract exists; that the contract and pleadings provide a basis for specific performance; that Corsicana breached that contract; and that the contract was damaging.

## A.   Applicable Law

A no-evidence summary judgment is equivalent to a pre-trial directed verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Once an appropriate no-evidence motion for summary judgment is filed, the non-movant must produce summary judgment evidence raising a genuine issue of material fact to defeat the summary judgment. *See* TEX. R. CIV. P. 166a(i). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135

S.W.3d 598, 600 (Tex. 2004). We do not consider any evidence presented by the movant unless it creates a fact question. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004).

More than a scintilla of evidence exists if the evidence would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam); *see Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10 25 (Tex. 1994). Evidence that is "so weak as to do no more than create a mere surmise or suspicion of fact" is no evidence and, thus, does not create a fact issue. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983); *see Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.— Corpus Christi 2003, no pet.) (op. on reh'g). In determining whether the non-movant has met his burden, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

We review the trial court's grant of a traditional motion for summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a traditional motion for summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The movant bears the burden of proof in a traditional motion for summary judgment, and all doubts about the existence of a

genuine issue of material fact are resolved against the movant. *See Grant*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We will affirm a traditional summary judgment only if the record establishes that the movant has conclusively proved its defense as a matter of law or if the movant has negated at least one essential element of the plaintiff's cause of action. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

When the trial court's judgment does not specify which of several grounds proposed was dispositive, we affirm on any ground offered that has merit and was preserved for review. *See Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 157 (Tex. 2004). Moreover, when a party moves for summary judgment under both rules 166a(c) and 166a(i), "[we] first review the trial court's summary judgment under the standards of rule 166a(i)." *Ridgway*, 135 S.W.3d at 600.

## B.    Discussion

As noted above, Kerens, along with others, filed suit against Corsicana for breach of contract. In their live pleading, appellants complained about Corsicana's decision in 2009 to implement an inclining block rate structure for water sales and alleged that:

> Thus, the Ratepayers with standard contracts seek as damages the difference between the amounts actually charged by Corsicana and the amounts that should have been charged based on the "minimum inside city retail water rate." Kerens seeks as damages the difference between the

amounts actually charged by Corsicana and the amounts that should have been charged based on the contract requirement that Corsicana charge "a base rate and a volume rate" that are "the rates being charged general consumers of Seller, within the City of Corsicana."

In its traditional summary-judgment motion, Corsicana asserted that: (1) Kerens may not seek specific performance under the contract because the contract has expired and there is no other basis for specific performance; (2) the increase in wholesale water rates was authorized under the contract; and (3) there is no evidence of breach, damages, or entitlement to a reduction in rates. Moreover, in its no-evidence summary-judgment motion, Corsicana challenged three elements of Kerens's breach-of-contract claim—the existence of a valid contract, breach, and damages. *See Runge v. Raytheon E-Systems, Inc.*, 57 S.W.3d 562, 565 (Tex. App.—Waco 2001, no pet.) (noting that the elements of a breach-of-contract claim are: (1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach); *see also Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 299 (Tex. App.—Dallas 2009, no pet.) (stating that a breach-of-contract claim occurs when a party fails to perform an act that it has explicitly or impliedly promised to perform).

Attached to Corsicana's summary-judgment motion is the water-purchase contract between Corsicana and Kerens, as well as the affidavit of Corsicana's City Manager Connie Standridge and the oral deposition of Kerens's City Administrator Cindy Scott. With regard to the rates charged for water, the contract provides as follows:

1. **Rates and Payment Date.** To pay Seller, not later than the 20th day following each monthly billing cycle for water delivered in accordance with the "schedule of rates" as hereinafter defined, said rates not be be [sic] altered or amended more than yearly as provided hereinafter. The said "schedule of rates," as hereinafter defined, shall be the then prevailing rate in effect at the time of initial delivery of water to Purchaser's meter, said rate yearly established by the City Commission of the City of Corsicana. The rates shall include a base rate and a volume rate (per 1,000 gallons rate).

    . . .

5. **Modification of Contract.** That the provisions of this contract pertaining to the "schedule of rates" to be paid by Purchaser to Seller for water are subject to modification at the end of every one year period, by Seller, with said one year period construed to be the anniversary date from date of inception of the delivery of water to point of delivery at Purchaser's clear-well. Any increase or decrease shall be based on system-wide rates for the consumers of Seller within the corporate limits of the City of Corsicana, subject to the definition of "schedule of rates" as hereinafter set forth. Other provisions of this contract may be modified or altered by mutual agreement.

    . . .

8. **Schedule of Rates.** Rates shall be interpreted, for all purposes under this contract, as meaning the rates being charged general consumers of Seller, within the City of Corsicana, Texas.

(Emphasis in original.).

Corsicana posits that the only limitation on its right to set rates is that Kerens must be charged the same rates as other "general consumers" of Corsicana's water who are located within Corsicana. On the other hand, Kerens contends that the contract limited Corsicana's right to set rates to a base rate and a single volume rate. Kerens complains that, in 2009, Corsicana breached the contract by establishing an inclining block of three

volume rates that increased with the amount of water purchased. In support of its argument, Kerens included the following chart, which is derived from information received from the Corsicana City Council:

| | Rate per 1,000 gallons purchased | | |
|---|---|---|---|
| Year Rate Set | 1-10,000 gallons | 10,001 gallons-25,000 gallons | More than 25,000 gallons |
| 2009 | $3.00 | $3.15 | $3.25 |
| 2012 | $2.80 | $3.15 | $3.25 |
| 2013 | $3.00 | $3.15 | $3.25 |
| 2014 | $3.45 | $3.60 | $3.70 |

Corsicana's volumetric rates are especially concerning to Kerens because the summary-judgment evidence demonstrates that Kerens purchases over 99% of its water at the highest Third-Tier Rates.

In any event, based on our review, we do not agree with Kerens's interpretation of the contract. Specifically, the contract allows Corsicana to establish "a base rate and a volume rate (per 1,000 gallons rate)," so long as the rates charged to Kerens are the same rates charged to Corsicana's "general consumers" within Corsicana. The parties do not dispute the base rate, but rather focus their arguments on the volume rate. The language of the contract authorizes Corsicana to establish a "volume rate (per 1,000 gallons rate)" or, in other words, a rate based upon the volume of water purchased. This is precisely what Corsicana has done. As shown above, the so-called "inclining block rates" provide

a singular rate that varies based on volume—something that we believe was contemplated by the language "volume rate (per 1,000 gallons rate)."[2]

We also cannot say that the summary-judgment evidence establishes that the rates charged to Kerens and "general consumers" within Corsicana differed.  In particular, Scott testified, in her oral deposition, that:  (1) Kerens has always been a major user of water; (2) it has always been charged the same base rate as many of the people who live in Corsicana; and (3) the volumetric rate charged to Kerens is the same rate Corsicana charges its large water users.  Scott later admitted that the rates charged to Kerens versus what has been billed to Corsicana in-city customers has been the same the entirety of the contract.

Therefore, based on the foregoing and applying the applicable standards, we cannot say that Kerens has proffered more than a scintilla of evidence that creates a material fact issue as to the breach element of Kerens's breach-of-contract action. Accordingly, we cannot say that the trial court erred in granting summary judgment in favor of Corsicana as to Kerens's breach-of-contract claims.  And because Corsicana established entitlement to summary judgment on one element of Kerens's breach-of-contract claims, we need not address the remaining elements of Kerens's cause of action.

---

[2] Interestingly, in her testimony, Scott admitted that the 2009 changes did not affect rates, but rather volume.

*See Mason*, 143 S.W.3d at 798; *Grinnell*, 951 S.W.2d at 425. We overrule appellants' second and third issues.

## IV. CORSICANA'S PLEA TO THE JURISDICTION

In their fourth, fifth, and sixth issues, the Water Supply Corporations challenge the trial court's granting of Corsicana's plea to the jurisdiction. They argue that the trial court erred in granting Corsicana's plea to the jurisdiction because: (1) cities are not immune from breach-of-contract claims arising from the performance of proprietary functions, such as wholesale water sales; (2) immunity is waived for breach-of-contract claims pertaining to written contracts for providing goods or services to a local governmental entity; and (3) specific performance is not an independent claim, but rather available relief for breach-of-contract claims.

### A. Standard of Review

A plea to the jurisdiction based on sovereign immunity challenges a trial court's subject-matter jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). "A plea questioning the trial court's jurisdiction raises a question of law that we review de novo." *Id.* The plaintiff must allege facts that affirmatively establish the trial court's subject-matter jurisdiction. *Id.* In determining whether the plaintiff has satisfied this burden, we construe the pleadings liberally in the plaintiff's favor and deny the plea if facts affirmatively demonstrating jurisdiction have been alleged. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004).

A plea to the jurisdiction may challenge the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 227. In some cases, the challenged jurisdictional facts are distinct from the merits of the case, but in other cases, the challenged jurisdictional facts are inextricably intertwined with the merits of the case. *Id.* "[I]n a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Id.* Our standard of review on appeal "generally mirrors that of a summary judgment," meaning we will take as true all evidence favorable to the non-movant and indulge reasonable inferences and resolve doubts in the non-movant's favor. *Id.* at 228.

If "the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* at 226-27. A court may grant a plea to the jurisdiction without affording the plaintiff an opportunity to amend only if "the pleadings affirmatively negate the existence of jurisdiction." *Id.* at 227. "A trial court is not required to deny an otherwise meritorious plea to the jurisdiction or a motion for summary judgment based on a jurisdictional challenge concerning some claims because the trial court has jurisdiction over other claims." *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006).

**B.** **Applicable Law**

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability from money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). Under the common-law doctrine of sovereign immunity, the State cannot be sued without its consent. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006)). And like sovereign immunity, governmental immunity affords similar protection to subdivisions of the State, including counties, cities, and school districts. *LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 208 (Tex. App.—Dallas 2012, no pet.).

Governmental immunity has two components: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity; and (2) immunity from suit, which bars suit against the entity altogether. *Id.* Immunity from suit deprives the court of subject-matter jurisdiction and is properly raised in a plea to the jurisdiction, whereas immunity from liability is asserted as an affirmative defense. *See Miranda*, 133 S.W.3d at 224; *see also Palasota*, 362 S.W.3d at 208. "Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit." *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). "If the Legislature has not expressly waived immunity from suit, the State retains such immunity even if its

liability is not disputed." *Id.* "Immunity from liability protects the State from money judgments even if the Legislature has expressly given consent to sue." *Id.*

Section 271.152 of the Local Government Code waives immunity to suit for qualifying local governmental entities for the purpose of adjudicating a claim for breach of contract entered into by the local governmental entity. TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2016); *see City of Houston*, 353 S.W.3d at 134. For section 271.152's waiver of immunity to apply, the following elements must be established: (1) the party against whom the waiver is asserted must be a "local governmental entity" as defined by the Local Government Code; (2) the entity must be authorized by statute or the Constitution to enter into contracts; and (3) the entity must in fact have entered into a contract that is defined by section 271.151(2) of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151(2) (West 2016), 271.152; *see also City of Houston*, 353 S.W.3d at 134-35. For the purpose of waiving immunity under Chapter 271 of the Local Government Code, a contract must be written and must state "the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *City of Houston*, 353 S.W.3d at 135 (citing TEX. LOC. GOV'T CODE ANN. § 271.151(2)(B)).

**C.** **Discussion**

**1. Governmental or Proprietary Function?**

Here, the Water Supply Corporations characterize the act of selling water wholesale to non-resident entities as a proprietary act for which there is no immunity from suit. We disagree.

Municipalities may exercise broad powers through two different roles— proprietary or governmental.[3] *See Wasson Interests, Ltd. v. City of Jacksonville*, No. 17-0198, 2018 Tex. LEXIS 999, at * 4 (Tex. Oct. 5, 2018) (citing *Gates v. City of Dallas*, 704 S.W.2d 737, 738 (Tex. 1986)); *see also City of Merkel v. Copeland*, No. 11-16-00323-CV, ___ S.W.3d ___, 2018 Tex. App. LEXIS 8501, at *4 (Tex. App.—Eastland Oct. 18, 2018, no pet. h.). The governmental/proprietary dichotomy, which stems from the common law, "recognizes that immunity protects a governmental unit from suits based on its performance of a

---

[3] The functions of a municipality fall into one of two categories. Governmental functions are those functions that are enjoined on a municipality by law and are given to it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public. A municipality performing a governmental function is afforded sovereign immunity unless immunity has been waived under the Texas Tort Claims Act.

Proprietary functions are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality. Proprietary functions are not integral to a municipality's functions as an arm of the state. The sovereign immunity of the state does not protect a municipality from liability for actions taken in a proprietary capacity because such are undertaken for the benefit of private enterprise or the residents of the municipality rather than for the benefit of the general public.

*City of San Antonio v. BSR Water Co.*, 190 S.W.3d 747, 752 (Tex. App.—San Antonio 2005, no pet.) (internal citations & quotations omitted).

governmental function but not a proprietary function." *Wasson Interests, Ltd.*, 2018 Tex. LEXIS 999, at \*4. And this dichotomy "is based on the reality that sovereign immunity is inherent in the State's sovereignty, and municipalities share that protection when they act as a branch of the State but not when they act in a proprietary, non-governmental capacity." *Id.* at \*5 (internal citations & quotations omitted). Therefore, we must determine whether Corsicana acted in its governmental or proprietary capacity when it entered into contracts with the Water Supply Corporations for the sale of wholesale water to non-residents. And in doing so, the focus of our inquiry is on "whether the municipality was engaged in a governmental or proprietary function when it entered the contract, not when it allegedly breached that contract." *Id.* at \*13.

In the context of contract claims, we must consider the relevant statutory provisions, as well as the common law, to determine the boundaries of governmental immunity. *Id.* at \*7. To "aid our inquiry," we look to the definitions for governmental and proprietary functions set forth by the Legislature in the Texas Tort Claims Act ("TTCA"). *Id.; see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215 (West Supp. 2018). Under the TTCA, governmental functions are defined as "those functions that are enjoined on a municipality by law and are given to it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a). The TTCA provides a non-exhaustive list of thirty-six

governmental functions, ranging from "police and fire protection and control" to "animal control." *Id.* § 101.0215(a)(1), (33); *see Wasson Interests, Ltd.*, 2018 Tex. LEXIS 999, at *7.

On the other hand, the TTCA defines proprietary functions as "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *Id.* § 101.0215(b). Such functions include "the operation and maintenance of a public utility," "amusements owned and operated by the municipality," and "any activity that is abnormally dangerous or ultrahazardous." *Id.* § 101.0215(b)(1)-(3). "Proprietary functions, however, do not include any of the Act's enumerated governmental functions." *Wasson Interests, Ltd.*, 2018 Tex. LEXIS 999, at *8 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(c)). The Texas Supreme Court has also stated that a proprietary function may be treated as a governmental action if the proprietary action is "essential" to a governmental action. *Wasson Interests, Ltd.*, 2018 Tex. LEXIS 999, at *21.

If the governmental action is not expressly listed in section 101.0215, courts must apply the general definitions of governmental and proprietary functions. *Id.* at **14-15. In doing so, we consider: (1) whether the City's act of entering into the contract was mandatory or discretionary; (2) whether the contract was intended to benefit the general public or the City's residents; (3) whether the City was acting on the State's behalf or its own behalf; and (4) whether the City's act of entering into the contract "was sufficiently

related to a governmental function to render the act governmental even if it would otherwise have been proprietary." *Id.* at \*\*14-15.

As noted above, we must determine whether Corsicana acted in its governmental or proprietary capacity when it entered into contracts with the Water Supply Corporations for the sale of wholesale water to non-residents. If the City's actions are listed as a governmental function under the TTCA, we have no discretion, regardless of the City's motives, to declare the actions as proprietary. *City of Plano v. Homoky*, 294 S.W.3d 809, 814 (Tex. App.—Dallas 2009, no pet.). When reviewing the TTCA's list of governmental functions, Corsicana's sale of wholesale water to both residents and non-residents falls under the "waterworks" or "water and sewer service" provisions of the TTCA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(11), (32). Accordingly, we conclude that Corsicana was acting in its governmental capacity when it entered into the contracts with the Water Supply Corporations for the sale of wholesale water to non-residents.[4] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(11), (32); *see also City of*

---

[4] On appeal, the Water Supply Corporations also try to distinguish between providing water to the citizens of Corsicana and to non-residents, arguing that the latter constitutes a proprietary function. However, Texas Courts have noted that a plaintiff may not "'split various aspects of [the City's] operation into discrete functions and recharacterize certain of those functions as proprietary.'" *City of Plano v. Homoky*, 294 S.W.3d 809, 815 (Tex. App.—Dallas 2009, no pet.) (quoting *City of San Antonio v. Butler*, 131 S.W.3d 170, 178 (Tex. App.—San Antonio 2004, pet. denied)). As such, we disagree with the argument that providing water to non-residents somehow transforms Corsicana's act of providing water into a proprietary function that does not fall within the "waterworks" or "water and sewer service" governmental functions listed in the TTCA. *See id.*; TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(11), (32) (West Supp. 2018); *see also City of Texarkana v. City of New Boston*, 141 S.W.3d 778, 784 n.3 (Tex. App.—Texarkana 2004, pet. denied) ("The introduction of a proprietary element into an activity designated by the Legislature as governmental does not serve to alter its classification."); Christopher D. Jones, Comment, *Texas Municipal Liability: An Examination of the State and Federal Causes of Action*, 40 BAYLOR L. REV. 595, 615 (1988) ("If a

*Merkel*, ___ S.W.3d ___, 2018 Tex. App. LEXIS 8501, at *8 (concluding that "the City exercised a governmental function when it contracted to dispose of its treated wastewater/effluent by sale"); *Multi-County Water Supply Corp. v. City of Hamilton*, 321 S.W.3d 905, 909 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (concluding that governmental immunity applied to a breach-of–contract action brought by Multi-County Water Supply Corporation regarding the City of Hamilton's decision to increase the rates it charged Multi-County for treated water); *City of San Antonio v. BSR Water Co.*, 190 S.W.3d 747, 753-54 (Tex. App.—San Antonio 2005, no pet.) (concluding that the San Antonio Water System's decisions to drill wells, purchase water, and file an application for a CCN over the Expansion Area cannot be distinguished from the City's governmental function to provide "water and sewer service"); *City of Texarkana v. City of New Boston*, 141 S.W.3d 778, 783-84 (Tex. App.—Texarkana 2004, pet. denied) (rejecting plaintiffs' argument that Texarkana's sale of water to the citizens of the Seven Cities was proprietary and noting that "[a]lthough waterworks and a number of other municipal functions have traditionally been considered proprietary under the common law," section 101.0215 of the TTCA reclassified these functions as governmental).

---

proprietary function does not include governmental functions, a function containing a governmental component cannot be considered proprietary, and therefore must be governmental. Thus, in regard to mixed functions, the rule now seems to be that if any one component of a function is governmental, the entire function will be considered governmental, and an action involving that function will have to be brought under the Tort Claims Act.").

Despite the foregoing, the Water Supply Corporations rely heavily on a decision issued by the Eastland Court of Appeals in 2002. *See generally City of Ranger v. Morton Valley Water Supply Co.*, 79 S.W.3d 776 (Tex. App.—Eastland 2002, pet. denied). We find this reliance to be misplaced.

In *City of Ranger*, the Eastland Court of Appeals addressed governmental authority to regulate water rates and not governmental immunity and noted the following: "To provide the wholesale supply of water to a nonresident retail supplier is to provide a proprietary function." *See id.* at 779. However, in support of this statement, the Eastland Court of Appeals relied on *City of Big Spring v. Board of Control*, 404 S.W.2d 810, 812 (Tex. 1966)—a case that was decided before the 1970 amendment of the Texas Tort Claims Act and the 1987 amendment reclassifying as governmental a number of activities that were considered proprietary under the common law. *See City of Texarkana*, 141 S.W.3d at 784 n.3 (citing Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 3.02, 1987 Tex. Gen. Laws 37, 47-48). As such, we are not persuaded by the Water Supply Corporations' reliance on *City of Ranger*.

### 2. Section 271 of the Local Government Code

The Water Supply Corporations also argue that even if their claims involve governmental functions, immunity is waived for breach-of-contract claims pertaining to written contracts for providing goods or services to a local governmental entity. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151(2), 271.152. Once again, we disagree.

Corsicana is a local governmental entity, and therefore, a contract for goods or services is required under law to waive immunity.[5] *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151(3)(A), 271.152. Section 271.152 reads:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.

*Id.* § 271.152. Chapter 271 defines a "contract subject to this subchapter" as a "written contract stating the essential terms of the agreement for *providing goods and services to the local government entity* that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2) (emphasis added). Thus, there is a waiver of immunity only when the contract involves the provision of goods or services *to* a local governmental entity. *See id.* §§ 271.151(2), 271.152.

The term "services" is not defined in Chapter 271. However, the Texas Supreme Court has held that the term "is broad enough to encompass a wide array of activities," and "includes generally any act performed for the benefit of another." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010) (internal citation & quotations omitted). Furthermore, the services provided "need not be the primary

---

[5] It is undisputed that Corsicana is a home-rule municipality within the context of section 5.004 of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 5.004 (West 2008) ("A municipality is a home-rule municipality if it operates under a municipal charter that has been adopted or amended as authorized by Article XI, Section 5, of the Texas Constitution.").

purpose of the agreement." *Id.* However, section 271 does not extend to "'contracts in which the benefit that the local governmental entity would receive is an indirect, attenuated one.'" *Id.* (quoting *Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex. App.—Waco 2009, pet. denied) (op. on reh'g)); *cf. Lubbock County Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 303 (Tex. 2014) ("When a party has no right under the contract to receive services, the mere fact that it may receive services as a result of the contract is insufficient to invoke chapter 271's waiver of immunity."). The First Court of Appeals in *East Houston Estate Apartments, L.L.C. v. City of Houston* further explained the limitations on the term "services" in the statute:

> If every contract that confers some attenuated benefits on a governmental entity constitutes a contract for a "service," the limitation of contracts covered by section 271.152 to "contract for goods or services provided to the entity" loses all meaning. Nothing in the statute [or] in its legislative history supports such an interpretation. Had the legislature intended to waive immunity from liability for every contract participated in by the State, it could have done so. We must interpret the limitation as having some meaning.

294 S.W.3d 723, 736 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

In this issue, the Water Supply Corporations allege that they provide numerous services to Corsicana under the contract, including the construction of storage, pumping, and pressure maintenance or other facilities; agreeing to take appropriate actions to curtail or limit water usage during times of emergency or shortage; developing a water-conservation plan; agreeing to adopt and enforce adequate plumbing regulations; purchasing an air gap and backflow preventer; and agreeing to indemnify Corsicana for

any losses, damage, or liability caused by the negligence of the Water Supply Corporations.

Despite the foregoing, the "central purpose" of the contracts between Corsicana and the Water Supply Corporations is indisputably Corsicana's sale of wholesale water to the Water Supply Corporations, not vice versa. *See id.*; *see also Brazos River Auth. v. Brazos Elec. Power Coop., Inc.*, No. 10-09-00403-CV, 2010 Tex. App. LEXIS 4742, at \*\*9-10 (Tex. App.—Waco June 23, 2010, pet. denied) (mem. op.). Like *Berkman* and *Brazos River Authority*, the "services" purportedly provided by the Water Supply Corporations to Corsicana are, at best, indirect and attenuated benefits that do not result in a section 271.152 waiver of governmental immunity. *See Church & Akin, L.L.C.*, 442 S.W.3d at 303; *Berkman*, 311 S.W.3d at 526[6]; *see also Brazos River Auth.*, 2010 Tex. App. LEXIS 4742, at \*\*9-10 ("Brazos Electric pleads that because, under the FUA, it will operate, maintain, and repair the Facility and supply the Facility with electricity, the FUA provides the essential terms of an agreement for providing goods and services to the Authority. The FUA is in essence a lease of the Facility—the FUA describes the Facility as the 'Leased Facility.' Brazos Electric's lease of the Facility is not the provision of goods and services to the

---

[6] In *Berkman v. City of Keene*, 311 S.W.3d 523 (Tex. App.—Waco 2009, pet. denied), the city entered into a contract to provide, among other things, sewer services to a landowner for thirty-five years. *Id.* at 524-25. The landowner contended that when he used the property as a home for children who were wards of the state and allowed his property to be annexed, he was providing services to the city that caused the contract to fall within the waiver of immunity set forth in section 271.152. *See id.* at 527. This Court determined that both of these benefits to the city were indirect in nature, and therefore, the contract between the city and the landowner did not fall under section 271.152. *See id.*

Authority, and Brazos Electric does not attempt to argue otherwise in this appeal."). In fact, these "services" mentioned by the Water Supply Corporations are merely actions that are necessary to facilitate the procurement of water by the Water Supply Corporations for their customers. Accordingly, we hold that the Water Supply Corporations' claims for breach of contract against Corsicana do not come within section 271.152's waiver. *See* TEX. LOC. GOV'T CODE ANN. § 271.152; *Berkman*, 311 S.W.3d at 526; *E. Houston Estate Apts., L.L.C.*, 294 S.W.3d at 736; *see also Brazos River Auth.*, 2010 Tex. App. LEXIS 4742, at **9-10. And given this, we cannot say that the trial court erred in granting Corsicana's plea to the jurisdiction as to the Water Supply Corporations. *See Holland*, 221 S.W.3d at 642; *see also Miranda*, 133 S.W.3d at 227. We overrule the fourth, fifth, and sixth issues brought by the Water Supply Corporations.[7]

## V.  CONCLUSION

Having sustained Frost's first issue, we reverse the trial court's order granting Corsicana's motion to dismiss and remand for proceedings consistent with this opinion. We affirm the final judgment of the trial court in all other respects.

AL SCOGGINS
Justice

---

[7] And given our conclusions regarding governmental immunity and the lack of a waiver of Corsicana's immunity, we need not address the Water Supply Corporations' contention regarding specific performance. *See* TEX. R. APP. P. 47.1, 47.4.

Before Chief Justice Gray,
 Justice Davis, and
 Justice Scoggins
Affirmed, in part, and reversed and remanded, in part
Opinion delivered and filed November 14, 2018
[CV06]

