Opinion by Justice Boatright
The Dallas/Fort Worth International Airport Board appeals an interlocutory order denying its plea to the jurisdiction. We hold that the Board was engaged in a governmental function and therefore enjoyed governmental immunity for most of the claims against it. The Legislature, however, has waived the Board's immunity with respect to the breach of contract claim. We therefore affirm in part and reverse and render in part.
BACKGROUND
The Board was established in 1968 by contract between the cities of Dallas and Fort Worth. It consists of members from both cities and has the exclusive authority to "plan, acquire, establish, construct, improve, equip, maintain, operate, regulate, protect, and police" the Dallas/Fort Worth International Airport. TEX. TRANSP. CODE ANN . § 22.074(c), (d) (West 2011). The Board is "a special purpose governmental entity separate from each of the cities." Dallas/Fort Worth Int'l Airport Bd. v. Ass'n of Taxicab Operators, USA , 427 S.W.3d 547, 548 (Tex. App.-Dallas 2014, pet. denied). It has the exclusive power to operate DFW Airport for the cities. Id. at 549-50.
The contract establishing the Board authorizes it to contract for professional services and to fix the time, manner, and payment for these services. This contract establishes an executive director as the Board's chief officer, who is required to make recommendations to the Board in connection with the Board's exercise of its contract-based powers. In addition, a 2007 Board resolution authorizes its staff to execute contracts on behalf of the Board in an amount up to $50,000 without the Board's express approval. Pursuant to this delegated authority, Board staff in 2012 retained a third-party consultant, appellee Vizant Technologies, LLC, to analyze the Board's credit-card processing costs.
The parties finalized their engagement in a consulting agreement signed on August 29, 2012.[1] The duration of the agreement was thirty-six months from the date of the first invoice. Vizant's fee was to be based on the reduction in payment-processing costs that it achieved. The agreement also provided that Vizant's compensation would not exceed $50,000 and that Vizant would stop work once its compensation reached this limit. The Board staff would then "make a good faith effort" to obtain Board authorization to increase the limit.
Vizant delivered the consulting services contemplated by the agreement, and by its calculations it was due fees after the first year that greatly exceeded $50,000. Pursuant to the "good faith effort" clause, Vizant in November 2013 sought to increase the $50,000 limit under the contract. Board *72 staff in June 2014 submitted a request to the Board for a revised limit of $330,000, but the Board rejected the request. The Board paid Vizant's $50,000 fee as specified in the agreement.
Vizant sued the Board for breach of contract, fraudulent inducement, fraud-in-the-performance, promissory estoppel, and attorney's fees. The Board filed a plea to the jurisdiction that challenged Vizant's pleadings on the ground that Vizant's fraud and promissory estoppel claims were barred by governmental immunity.[2] Following a hearing, the district court denied the Board's plea to the jurisdiction. This interlocutory appeal followed.
ANALYSIS
Sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which certain governmental units have been sued. Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 224 (Tex. 2004). We review a trial court's decision about whether it has jurisdiction de novo. Id. at 228. When a plea to the jurisdiction challenges the pleadings, we determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction, and we construe the pleadings liberally in favor of the plaintiff, looking to the pleaders' intent. Id. at 226. We indulge every reasonable inference and resolve all doubts in the plaintiff's favor. Id. at 228. We are not required to look solely at the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. Bland Indep. School Dist. v. Blue , 34 S.W.3d 547, 555 (Tex. 2000). We first determine whether immunity applies and, if it does, we defer to the Legislature's decision to waive, or not to waive, such immunity. Wasson Interests, Ltd. v. City of Jacksonville , 489 S.W.3d 427, 435 (Tex. 2016).
Applicability of Immunity
Political subdivisions of the state are immune from suit when they perform governmental functions, but not when they perform proprietary functions. Id. at 430. The Board argues that Vizant's claims are related to the operation of an airport, which is a governmental function. Vizant, however, contends that the issue is not whether the Board engaged in functions that are classifiable as either governmental or proprietary, but whether the negotiation and performance of the agreement constituted governmental or proprietary functions. Mindful of our obligation to construe the pleadings in Vizant's favor, Miranda , 133 S.W.3d at 226, we will examine Vizant's arguments in detail to determine whether the activity at issue in this case constitutes a governmental or proprietary function.
Vizant alleges that the Board knew its credit-card processor was charging too much money before the Board hired Vizant and that the Board could have hired another credit-card processor at any time. Vizant argues that the Board's decision to contract with Vizant was therefore discretionary, as were the services that Vizant performed under the contract. This is relevant, Vizant contends, because discretionary acts are proprietary. Vizant bases its argument on Canario's, Inc. v. City of Austin , in which the Austin Court of Appeals held that proprietary functions are "those that the municipality performs in its discretion." No. 03-14-00455-CV, 2015 WL 5096650, at *2 (Tex. App.-Austin Aug. 26, 2015, pet. denied) (mem. op.).
*73 The Canario's court opined that "governmental functions are what a municipality must do for its citizens and proprietary functions are what a municipality may, in its discretion, perform for its inhabitants." Id. at *3 (emphasis in original) (citing Oldfield v. City of Houston , 15 S.W.3d 219, 226 (Tex. App.-Houston [14th Dist.] 2000, pet. denied), superseded by statute on other grounds as recognized in Truong v. City of Houston , 99 S.W.3d 204, 210 (Tex. App.-Houston [1st Dist.] 2002, no pet.) ). The Canario's court then explained what it meant by this. "Stated another way, governmental functions are those normally performed by governmental units," while "proprietary functions are those that can be, and often are[,] provided by private persons." Id. (citation and internal quotation marks omitted). Thus, under Canario's , the question is not simply whether a governmental entity chose to do something. Instead, discretion is just one part of the inquiry. The Canario's court explains that proprietary functions are those that "could easily be handled by a private entity and are discretionary and not essential to or even usually associated with a municipality's" governmental functions. Id. at *4 (citing Oldfield , 15 S.W.3d at 226 ). Accordingly, we will examine whether the activity that Vizant contends is discretionary-the Board's decision to hire Vizant and the services contemplated under the contract-satisfies those criteria.
Vizant alleges that the services contemplated under the contract could easily be handled by a private entity, and the pleadings support that allegation because the parties agree that Vizant performed the services contemplated under the contract. Vizant also alleges that the Board's decision to hire Vizant and the services contemplated under the contract were discretionary, and it supports that allegation with references to relevant deposition testimony in the record.
Finally, construing the pleadings liberally in Vizant's favor, as we must, Miranda , 133 S.W.3d at 226, Vizant appears to allege that hiring someone to reduce the Board's costs in collecting fees for processing credit-card payments is not usually associated with a governmental function. In its response to the plea to the jurisdiction, Vizant alleges that its services "were performed specifically for the benefit of Airport Board staff" and, in its appellate brief, it claims that the "services themselves were not designed for the general public, but were services performed directly for Airport Board staff." Vizant cites three pages of the record in support of this allegation, all of which contain communications between Vizant and the Board referring to services for "DFW International Airport," "DFW," and "DFW Airport." The cited pages do not refer to services directly or specifically for Board staff. Vizant does not try to explain how this or any other evidence could support the conclusion that its services were designed and performed only for Board staff. Although we are to construe the doctrine of nonliability strictly against the Board, Canario's , 2015 WL 5096650, at *3, the record here shows only that Board staff negotiated a contract with Vizant on behalf of the Board and that the contract related to services designed and performed for the operation of the airport, not for Board staff specifically. Therefore, Vizant has failed to show that the activity it contends is at issue in this case-the Board's decision to hire Vizant and the services contemplated under the contract-is a proprietary function under Canario's .
On the contrary, that activity is very closely associated with governmental functions. The parties agree that the Board hired Vizant to reduce the costs of collecting fees for processing credit-card payments. The record shows that the *74 Board collects those fees in connection with its operation of an airport, something it is expressly authorized by statute to do. TEX. TRANSP. CODE ANN . § 22.086(1), (2) (West 2011). The operation of an airport is expressly defined by statute as a governmental function that is exercised for a public purpose and is a matter of public necessity. Id. § 22.002(a)(2) (West 2011). And an airport is expressly designated by statute to be a non-proprietary function. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(10) (West Supp. 2017). A plaintiff may not split various aspects of a city's operation into discrete functions and re-characterize certain of those functions as proprietary. See City of Plano v. Homoky , 294 S.W.3d 809, 815 (Tex. App.-Dallas 2009, no pet.). Accordingly, we conclude that the Board's engagement of Vizant was a governmental function.
The Legislature's designation of an airport as a governmental function, and not a proprietary one, applies to tort and breach of contract claims. Wasson , 489 S.W.3d at 439. Therefore, immunity applies to Vizant's tort and breach of contract claims.
Waiver of Immunity
The Board argues that no statute waives immunity for any of the claims asserted against it. We will consider each claim in turn.
Breach of contract
The Board contends that Vizant's contract claim is barred by immunity. A local government entity that enters into a written contract that is properly executed on behalf of the local entity waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to certain terms and conditions. TEX. LOC. GOV'T CODE ANN . §§ 271.151(2)(A), 271.152 (West 2016). One of these terms and conditions is that the total amount of money awarded in an adjudication brought against a local governmental entity is limited to the balance due and owed under the contract. Id. § 271.153(a)(1) (West 2016).
The Board argues that Vizant's breach of contract claim is not based on a properly executed contract, because Vizant's claims seek more than the $50,000 due under the contract. However, the amount due under the contract is a criterion for determining the amount awarded after adjudicating a breach of contract claim. Id. The award cannot be a criterion for determining whether there is a properly-executed contract, because there can be no award without adjudication, no adjudication without a waiver of immunity, and no waiver of immunity without a properly-executed contract. Id. §§ 271.151 -.153; see also Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cty. , 449 S.W.3d 98, 109 (Tex. 2014) (providing that section 271.153 limits the amount due by a governmental agency on a contract once liability has been established, and it does not foreclose the determination of whether liability exists).
Vizant argues that the contract was "properly executed on behalf of" the Board and that the Board breached the "good faith effort" clause of the contract. Vizant points to record evidence suggesting that nothing in the Board's delegated authority prohibits staff from agreeing to a "good faith" contract term, that nothing in such a term is inconsistent with the Board's procedures for contract approval, and that the Board included this term in standard contracts. The Board does not address this evidence, nor does it argue that the contract itself was defective in any way. It argues instead that the contract does not require the payment that Vizant seeks.
The Board did not argue in the trial court that it was immune from Vizant's breach of contract claim and that the Legislature had declined to waive such immunity. The Board is permitted to make those arguments for the first time on appeal, *75 Manbeck v. Austin Indep. Sch. Dist. , 381 S.W.3d 528, 530 (Tex. 2012) (per curiam), but it does not point to record evidence that might rebut the evidence supporting Vizant's allegation that the contract was properly executed.
Construing the pleadings liberally in Vizant's favor, Miranda , 133 S.W.3d at 226, we conclude that the Legislature has waived the Board's immunity with respect to Vizant's breach of contract claim.
Promissory estoppel
The Board also contends that Vizant's promissory-estoppel claim, which is based on allegations that the Board and its staff promised to approve a fee increase, is barred by governmental immunity. We agree with the Board. Consistent with the Supreme Court's refusal to recognize a waiver-by-conduct exception, Sharyland Water Supply Corp. v. City of Alton , 354 S.W.3d 407, 414 (Tex. 2011), several of our sister courts have held that promissory-estoppel claims fall outside the limited scope of waiver contained in Section 271.152 of the Local Government Code. See, e.g. , Gay v. City of Wichita Falls , 457 S.W.3d 499, 507 (Tex. App.-El Paso 2014, no pet.) ; City of Deer Park v. Ibarra , No. 01-10-00490-CV, 2011 WL 3820798, at *6-7 (Tex. App.-Houston [1st Dist.] Aug. 25, 2011, no pet.) (mem. op.); Somerset Indep. Sch. Dist. v. Casias , No. 04-07-00829-CV, 2008 WL 1805533, at *3 (Tex. App.-San Antonio Apr. 23, 2008, pet. denied) (mem. op.).[3] We conclude that Vizant's promissory-estoppel claim is barred by immunity.
Fraud
We also agree with the Board's contention that Vizant's fraud claims are barred by immunity, because the Tort Claims Act does not apply to a claim against the government arising out of an intentional tort. TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (West 2011).
CONCLUSION
We affirm the district court's denial of the Board's plea to the jurisdiction with respect to Vizant's breach-of-contract claim and its related claim for attorney's fees. We reverse the denial of the Board's plea with respect to Vizant's remaining claims and render judgment dismissing such claims for lack of subject-matter jurisdiction.

The agreement refers to Vizant according to its former name, P.E. Systems, LLC. In this opinion, we will refer to this party as Vizant.

The Board did not challenge Vizant's contract claim on immunity grounds. It instead sought summary judgment on this claim on the basis that it had not authorized a contract in excess of $50,000. The record does not reflect any ruling by the district court on the Board's summary-judgment motion.

Vizant relies upon Texas Southern University v. State Street Bank and Trust Co. , in which our sister court held that the "extraordinary factual circumstances" in that case-which Vizant contends are similar to the facts in this case-warranted recognition of a waiver of immunity by conduct. 212 S.W.3d 893, 907-08 (Tex. App.-Houston [1st Dist.] 2007, pet. denied). In light of the supreme court's subsequent refusal to recognize a waiver-by-conduct exception, see Sharyland, 354 S.W.3d at 414, we decline to recognize such an exception in this case.